UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ONE RESOURCE GROUP CORPORATION,  Plaintiff,  v.  CODY A. CRAWFORD,  Defendant. | CAUSE NO. 1:19-CV-445 DRL-SLC |

OPINION & ORDER

After Cody Crawford sold an insurance policy to an individual known as "J.S." in 2015, One Resource Group Corporation (ORG) distributed to Mr. Crawford a commission payment. The policy was later rescinded. ORG now wants its commission payment back. Mr. Crawford seeks to dismiss ORG's amended complaint because the court lacks personal jurisdiction over him. The court disagrees and denies the motion to dismiss.

BACKGROUND

ORG is an Indiana corporation engaged in the insurance brokerage business. Insurance agents use its services in placing insurance applications with insurance carriers, including life insurance, long-term care, disability, critical illness and annuities.

When an insurance carrier accepts an application and issues a policy, this generates commissions for payment to insurance agents and firms involved with the policy application. ORG administers these commission payments to insurance agents. If an insurance policy is cancelled, ORG can be responsible for repaying commissions to the carrier. Accordingly, ORG maintains commission reimbursement agreements with insurance agents that require them to reimburse ORG for any amounts that ORG owes back to the carrier in the event of policy cancellation.

Mr. Crawford signed a one-page commission reimbursement agreement with ORG. It provides that he must repay ORG commissions he receives from cancelled or rescinded policies. In 2015, Mr. Crawford acted as the insurance agent for an individual (with initials J.S.) who applied for an insurance policy with Allianz Life Insurance Company of North America resulting in a $162,127.42 commission payment to Mr. Crawford. The policy was rescinded or otherwise cancelled, and Allianz charged back to ORG commission payments for the policy that were paid to Mr. Crawford. In turn, ORG sought repayment from Mr. Crawford.

When left unpaid, ORG sued in state court seeking recovery of the commission. Mr. Crawford removed the case to this court based on diversity jurisdiction. After ORG filed an amended complaint, Mr. Crawford moved to dismiss it under Fed. R. Civ. P. 12(b)(2).

## STANDARD

Under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). A party may submit, and a court may consider, materials outside the pleadings in determining jurisdiction. *Id.* The court may weigh affidavits, exhibits, or other evidence submitted by the parties, but the court must construe all facts concerning jurisdiction in the non-movant's favor. *See id.; Charlesworth v. Marco Mfg. Co.,* 878 F. Supp. 1196, 1199 (N.D. Ind. 1995). When a district court rules on a defendant's motion to dismiss based only on the submission of written materials, the plaintiff must establish a *prima facie* case of personal jurisdiction. *Purdue,* 338 F.3d at 782.

## DISCUSSION

This court has personal jurisdiction over a defendant to the same extent a state court in Indiana could exercise personal jurisdiction over that defendant. *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Indiana's longarm statute extends to the limits of federal due process. *Advanced*

2

*Tactical*, 751 F.3d at 800; *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006). The court must consequently determine only whether exercising jurisdiction over Mr. Crawford comports with the limits of constitutional due process. *Walden v. Fiore*, 571 U.S. 277, 283 (2014); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).

Under federal due process analysis, a person is subject to personal jurisdiction when he has minimum contacts with the state such that subjecting him to suit doesn't offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The court recognizes both general (sometimes called "all-purpose") jurisdiction and specific (sometimes called "case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Specific jurisdiction over a defendant arises when a defendant "purposefully avails [himself] of the privilege of conducting activities with the forum state," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), the alleged injury arises from the defendant's forum-related activities, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, *Lexington*, 938 F.3d at 878; *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Specific jurisdiction focuses on the defendant's contacts with the forum state. *Advanced Tactical*, 751 F.3d at 801; *see also Walden*, 571 U.S. at 285 (the analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there").

When an individual enters a contract that creates continuing relationships and obligations with citizens of another state, he may be subject to regulation and jurisdiction by that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). That said, a "contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum." *Id.* at 478. "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957). In *McGee*,

3

the Supreme Court held that a single contract, entered into by mail with a forum state resident, could meet the minimum contacts test for a suit on the contract. There, the insurance company had no office or agent in California and had never done any business in California, but it solicited and delivered a reinsurance contract in California, insured the resident there, and failed to pay insurance benefits to that insured. Adding California's specially adopted rules, that was sufficient. *McGee*, 355 U.S. at 223.

The Supreme Court has since emphasized a "highly realistic" approach that eschews a mechanical test of merely whether a contract exists and focuses instead on business negotiations, the contract's contemplated future consequences, its terms, and the parties' course of dealing. *See Burger King*, 471 U.S. at 478-79. The parties offer no evidence on negotiations. Instead, to begin the analysis here, Mr. Crawford indisputably solicited ORG's services in Indiana in 2013 that led to the formation of this commission reimbursement agreement.

In *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990), a Pennsylvania attorney solicited the services of an environmental consulting firm in Wisconsin. After a chance meeting and after receiving information about the firm's consulting services, the attorney solicited the firm to work on a case in Tennessee. He later procured the firm's services in two additional lawsuits—one in Tennessee and one in California. The attorney sent information to Wisconsin for the firm's review, but all strategy conferences about these cases occurred at the attorney's office in Pennsylvania. *See id.* This circuit found personal jurisdiction proper based on two significant factors: the attorney solicited the firm's services, and he solicited those services on three occasions, "thus creating a continuing relationship between himself and a resident of the forum state." *Id.* at 1218.

Mr. Crawford did this and more. Mr. Crawford not just solicited ORG's brokerage services in Indiana, knowing full well the benefits of commissions from policies issued through use of its services, but on this record he did so 33 times over a seven-year period (from September 2013 to January 2020).

4

He also used ORG's services to facilitate licensing with more than 15 insurance carriers. His contract and course of dealing resulted in continuous and ongoing business dealings. *See id.*; *Burger King*, 471 U.S. at 473, 478.

His contact with Indiana wasn't a contract alone. The parties seem to omit the precise manner in which Mr. Crawford submitted applications to ORG (whether online or by mail, for instance), but he sent or submitted applications in Indiana for 33 uses of ORG's business services. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (requiring contact with forum). The course of dealing contemplated that ORG would administer commission payments for remittance to insurance agents such as Mr. Crawford. His ongoing business with ORG netted him $304,556 in commissions, and at times "premium" commissions because of the volume of business with ORG that he directed into Indiana.

More than that, his contract with ORG contemplated, as a specific future consequence, his repayment of a chargeback—that commission unearned because an insurance policy was cancelled or a premium was refunded—to ORG in Indiana. The essence of the contract terms here concerned the chargeback obligation. That was its purpose. And there wasn't any mystery to Mr. Crawford where that reimbursement would be paid. The contract plainly identified ORG as an Indiana company in Roanoke, Indiana. Its president's signature identified its office in Roanoke, Indiana. For Mr. Crawford's solicitation of the Indiana company's services, he owed an obligation to repay chargeback commissions in Indiana. That was the precise future consequence.

No one argues that Mr. Crawford's agency somehow dilutes these contacts for personal jurisdiction over him; and the fact remains that whether the application was really for "J.S." or any other insurance applicant, Mr. Crawford's submission of that application in Indiana had the dual intent of not just procuring insurance for his customer but also earning him a commission.

The contract relationship, Mr. Crawford's submission of another application to ORG, and his alleged breach of the reimbursement agreement's obligation to repay the commission are case-linked

in that this suit arises from this very contract and Mr. Crawford's obligation to reimburse ORG. Mr. Crawford needn't have been selling, advertising, or marketing his services to customers in Indiana for personal jurisdiction to be exercised here. The contract at issue—the reimbursement agreement—was triggered when Mr. Crawford didn't reimburse ORG after the policy was rescinded or cancelled. ORG alleges a $162,127 loss. Mr. Crawford purposefully availed himself of the privilege of soliciting the firm's services and then conducting continuous and ongoing business activity in Indiana, and the alleged injury arises from this forum-related activity.

The exercise of personal jurisdiction must also comport with fair play and substantial justice. It does here. Having regularly procured the services of an Indiana company, the burden on Mr. Crawford to litigate here is not great, despite any general inconvenience. *See Burger King Corp.,* 471 U.S. at 473-74 (individuals who "purposefully derive benefit" from their interstate activities cannot use personal jurisdiction as a "territorial shield to avoid interstate obligations that have been voluntarily assumed"); *McGee,* 355 U.S. at 223 ("modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity"). Indiana no doubt has an interest in deciding cases in which others have breached their contracts and caused harm to companies here. *See Madison Consulting Grp. v. South Carolina,* 752 F.2d 1193, 1209 (7th Cir. 1985) ("[the forum state] has a compelling interest in offering its residents legal avenues for enforcing contracts with nonresidents"). Fully expecting the reimbursement within Indiana, it cannot be said that ORG lacks any interest in obtaining convenient and effective relief by pursuing its suit here. *See F. McConnell & Sons, Inc. v. Target Data Sys., Inc.*, 84 F. Supp. 2d 961, 974 (N.D. Ind. 1999). Washington, where Mr. Crawford is domiciled now, has no interest in this dispute at all; the policy was to be issued to a customer in Texas through Mr. Crawford's business in Texas. Thus, haling Mr. Crawford into an Indiana forum will not offend Washington's interests.

CONCLUSION

Specific personal jurisdiction over Mr. Crawford exists because he purposefully availed himself of the privilege of soliciting ORG's services and conducting business activities on an ongoing basis within Indiana, because the alleged injury arises from his Indiana-related activity, and because the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. In short, the court's exercise of jurisdiction complies with constitutional due process. Accordingly, the court DENIES his motion to dismiss (ECF 19).

SO ORDERED.

June 3, 2020                                             *s/ Damon R. Leichty*
                                                         Judge, United States District Court