UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ONE RESOURCE GROUP CORPORATION,<br><br>            Plaintiff,<br><br>v.<br><br>CODY A. CRAWFORD,<br><br>            Defendant. | CAUSE NO. 1:19-CV-445 DRL |

## OPINION & ORDER

Cody Crawford, acting as an insurance agent for One Resource Group Corporation, declined to repay ORG a commission payment he earned on a life insurance policy that later the customer rescinded. This case presents the question whether Mr. Crawford must comply with this chargeback obligation under his Commission Reimbursement Agreement. ORG moves for summary judgment. The court denies the motion, finding a triable issue for the jury.

## BACKGROUND

ORG, an Indiana-based corporation, is an insurance broker. Insurance agents use its services to place insurance applications with insurers. When an insurer accepts an application and issues a policy, commissions are often generated for the insurance agent. If a policy is later cancelled, the insurance carrier will typically require the commission's return. This is called a "chargeback."

Cody Crawford, an insurance agent of over eleven years, worked as an insurance agent. He signed a Commission Reimbursement Agreement with ORG on May 16, 2014 [ECF 62, Ex. 1-A]. The agreement provided as follows:

> Should for any reason a policy be cancelled or a refund issued for any premium on which producer Cody Crawford was paid a commission or [] ORG becomes liable to return or reimburse to any third party (whether by chargeback, termination of policy or any other reason) for commission paid to producer, Cody Crawford, then such commission shall be charged back to Agency Owners, either as individuals or any

>   subsequent corporate entity that they own, and they shall immediately pay to ORG such chargeback. Notwithstanding anything herein to the contrary, ORG may set off any such chargeback against any other amounts or commissions, including but not limited to future commissions owed to ORG by agent or agency owners.

Mr. Crawford and Todd Stewart, ORG's president, both signed the agreement. ORG required Mr. Crawford to execute it so that he would be personally liable for chargeback commissions resulting from any cancelled or otherwise rescinded policy.

In 2015, Mr. Crawford utilized ORG's insurance brokerage services to act as an agent for an individual (J.S.) to procure an insurance policy from Allianz Life Insurance Company of North America. Allianz issued a life insurance policy to J.S. in August 2015 and paid a commission to Mr. Crawford. ORG also paid an override commission to Mr. Crawford for securing this policy.

In December 2018, a dispute arose between J.S. and Allianz about the policy. Sometime thereafter, J.S. and Allianz settled their dispute and cancelled the life insurance policy. In a letter dated March 1, 2019, Allianz informed Mr. Crawford that he owed $117,572.11 for the chargeback amount.

Meanwhile, ORG paid $117,292.09 (of the $117,572.11 chargeback amount) to Allianz. In addition to that amount, ORG already had paid an override commission to Mr. Crawford's entity, Dynamic Income Strategies, of $44,555.31. ORG requested repayment from Mr. Crawford, but he declined to repay the total chargeback of $161,847.40. This lawsuit ensued.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the

temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll. v. Valparaiso Comty. Schs.*, 953 F.3d 923, 924 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

ORG asserts alternative contract and unjust enrichment claims under Indiana law. Neither side raises a choice of law issue, so the court applies Indiana law in deciding this motion. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).

A. *Breach of Contract.*

ORG says Mr. Crawford breached the Commission Reimbursement Agreement. To recover for a breach of contract, ORG must prove that: (1) a contract existed, (2) Mr. Crawford breached the contract, and (3) ORG suffered damage as a result of Mr. Crawford's breach. *See Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007). Neither side disputes the contract's existence. Instead, the parties dispute the scope of Mr. Crawford's obligations and the attendant theory of breach.

"Under Indiana contract law, interpretation of an unambiguous contract is a matter of law that can be resolved on summary judgment." *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 753 (7th Cir. 2006). "A contract is not ambiguous merely because the parties disagree as to its proper construction; rather, a contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms." *Vincennes Univ. ex rel. Bd. of Trustees of Vincennes v. Sparks*, 988 N.E.2d

3

1160, 1165 (Ind. Ct. App. 2013). The court interprets the contract as a whole, construing the language "so as to not render any words, phrases, or terms ineffective or meaningless." *Id.* (citation omitted). "[W]ritten contracts are usually enforced in accordance with the ordinary meaning of the language used in them and without recourse to evidence, beyond the contract itself, as to what the parties meant." *Beanstalk Grp., Inc. v. AM General Corp.*, 283 F.3d 856, 859 (7th Cir. 2002).

ORG contends that the agreement's language is clear—Mr. Crawford must repay the company for any chargeback on a cancelled insurance policy. That is indeed the entire purpose of the agreement. The operative language appears in two bullet points; the entire agreement is less than a page. Its title—Commission Reimbursement Agreement—underscores the agreement's purpose otherwise spelled out within its terms. No one disputes that the obligation once existed, that the policy was procured but then cancelled, or that Mr. Crawford has declined to repay the commissions.

Mr. Crawford instead challenges whether his obligation is perpetual. He says the life insurance policy remained in effect for more than three years before it was cancelled and that he and ORG only contemplated a one-year chargeback period for commissions paid on policies that may be cancelled—that is, any cancellation that occurred within one year of the policy's issuance. He concedes that the agreement proves silent on the duration of a chargeback obligation. Given that life insurance policies are often long-term arrangements, he argues that an indefinite obligation to repay commissions would be illogical. Ten or twenty years could pass and still he could be on the hook.

ORG responds that the agreement's condition—exacting a chargeback only when ORG becomes liable to return or reimburse a commission to any third-party—fixes the obligation. ORG says any chargeback claim by ORG would be triggered by this defined future event and cut off by the statute of limitations. But that doesn't address the issue of whether this chargeback obligation generally could persist so long as the insurance policies, procured through Mr. Crawford, could be cancellable

4

for years or decades to come.[1] The parties provide the court no reason to believe the chargeback obligation would ever stop.

Because there is no condition in the agreement that would terminate Mr. Crawford's obligation at a specific time, the parties are "assumed to have had in mind a reasonable time" for his performance. *City of E. Chi., Ind. v. E. Chi. Second Century, Inc.*, 908 N.E.2d 611, 623 (Ind. 2009). "What constitutes a reasonable time depends upon the subject matter of the contract, the circumstances attending performance of the contract, and the situation of the parties to the contract." *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am., U.A.W. v. Randall Div. of Textron, Inc.*, 5 F.3d 224, 230 (7th Cir. 1993) (applying Indiana law) (citation omitted). Determination of the proper point of termination can prove a triable issue that precludes summary judgment. *Id.*

ORG argues that Mr. Crawford hasn't set forth any specific facts to show a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Mr. Crawford submitted an affidavit. ORG moved to strike portions of it but on no points that move the needle toward decision today.[2] An eleven-year veteran in the insurance industry, Mr. Crawford says the industry's standard practice is to limit the chargeback period to one year after the policy's inception. He also says he has sold

---

[1] In addition, the condition ORG cites is preceded by another and seemingly broader obligation, requiring a chargeback "[s]hould for any reason a policy be cancelled or a refund issued for any premium on which producer Cody Crawford was paid a commission" [ECF 62, Ex. 1-A]. This alternative basis for a chargeback reveals that ORG becoming liable to repay a third-party isn't the only condition in the contract. *See Vincennes*, 988 N.E.2d at 1165 (court must construe contract as a whole). ORG's argument that the agreement contains a singular condition that would terminate the obligation thus doesn't carry the day.

[2] For instance, Mr. Crawford says "ORG and I contemplated and understood that the Agreement applied to any chargebacks that would occur as the result of a cancellation or termination of a policy within the first year of the policy, as is the common and standard and practice in the industry" [ECF 64-1 ¶ 15]. What ORG contemplated or understood is outside Mr. Crawford's personal knowledge. *See* Fed. R. Civ. P. 56(c)(4) (affidavit used to oppose a motion must be made on personal knowledge). Mr. Crawford offers no facts as a basis to say what ORG understood, whether a statement from its authorized representative or point of negotiation. The court thus disregards this statement without need to strike it because it has no prejudicial bearing on this motion. *See Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014); *Rodgers v. Gary Cmty. Sch. Corp.*, 167 F. Supp.3d 940, 948 (N.D. Ind. 2016); *Kuntzman v. Wal-Mart*, 673 F. Supp.2d 690, 695 (N.D. Ind. 2009). The reasons why J.S. cancelled the life insurance policy also don't bear on whether Mr. Crawford breached his contract with ORG or retained an obligation three years later to repay a chargeback. The court thus denies the motion to strike.

numerous insurance policies issued by Allianz, both before and after this one, each subject to earning commissions and chargebacks if cancelled within the policy's first year.[3] No one has argued this was a mere unilateral mistake on his part.

This trade usage remains relevant and meaningful in interpreting a reasonable time for this chargeback obligation, or so a rational jury could find. *See Allstate Ins. Co. v. Dana Corp.*, 2001 Ind. LEXIS 1133, 24-25 (Ind. Dec. 20, 2001) ("Allstate is charged with an understanding of common industry practice. . . . How this all shakes out is a matter for the trier of fact in the first instance."); *Ent. USA, Inc. v. Moorehead Commc'ns, Inc.*, 93 F. Supp.3d 915, 929 (N.D. Ind. 2015) (applying Indiana law) ("contract made with reference to a particular business is presumed to have been made with reference to the known usage or general course of such business") (quoting *Clark Advert. Agency, Inc. v. Avco Broad. Corp.*, 383 N.E.2d 353, 356 (Ind. Ct. App. 1978)). ORG characterizes Mr. Crawford's affidavit as self-serving, but "the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present [his] side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (citations omitted).

ORG likens this case to *Phx. Mut. Life Ins. Co. v. Mitchell*, 1992 U.S. Dist. LEXIS 19456, 2-3 (N.D. Ill. Dec. 14, 1992), in which the parties entered into a similar brokerage agreement that required the insurance agent to repay commissions on policies that were later terminated. The brokerage firm sued the insurance agent to recover unearned commissions, and the court granted summary judgment for the firm. *Id.* at 1, 9. But there the insurance agent didn't put forward any facts to challenge the

---

[3] ORG moved to strike this last phrase about the one-year limitation. ORG argues that to the extent this limitation was imposed by contract or other written documentation, then Mr. Crawford's statement here violates the best evidence rule. The statement seems to come from Mr. Crawford's first-hand knowledge gained from selling other insurance policies, not from a document, so the best evidence rule doesn't apply. *See Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648-49 (7th Cir. 2006). ORG also argues that the statement is impermissible parol evidence, but this agreement remains silent as to time or how to inform the reasonable time imposed by law, and it contains no merger clause. The hearsay objection is also without merit.

firm's position. He asserted his Fifth Amendment privilege against self-incrimination in response to the firm's summary judgment motion. *Id.* at 7. Mr. Crawford's testimony presents a triable issue.

  B. *Unjust Enrichment.*

ORG pursues alternative relief on its claim for unjust enrichment. An "unjust enrichment claim becomes superfluous when neither side disputes the existence of a valid contract, even if it is being alleged in the alternative." *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp.2d 829, 849 (S.D. Ind. 2005). ORG had notice and took the opportunity to respond to Mr. Crawford's argument against this claim. Accordingly, the court grants summary judgment in favor of Mr. Crawford on this claim under Rule 56(f).

## CONCLUSION

The court DENIES ORG's summary judgment motion [ECF 62], GRANTS summary judgment in favor of Mr. Crawford on the unjust enrichment claim, and DENIES the motion to strike [ECF 66]. The court will set a trial after conferring with the parties.

SO ORDERED.

October 14, 2021           *s/ Damon R. Leichty*
                    Judge, United States District Court